# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA CLADEK, | ) 1:06cv0785 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Linda Cladek ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 3, 2006, the Honorable Anthony W. Ishii reassigned the case to the Honorable Lawrence J. O'Neill. Due to the recent appointment of Judge O'Neill to district court judge, the case was reassigned to the undersigned on March 1, 2007.

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed for disability insurance benefits and supplemental security income on October 9, 2002, alleging disability since February 15, 2002, due to broad-based midline disc protrusion and herniation. AR 57-59, 63-72. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 43-46, 51-54, 55. On June 16, 2005, ALJ Robert Evans held a hearing. AR 304-324. He denied Plaintiff's claim on July 14, 2005. AR 15-24. On April 17, 2006, the Appeals Council denied review. AR 8-11.

<u>Hearing Testimony</u>

ALJ Evans held a hearing on June 16, 2005, in Palmdale, California. Plaintiff appeared with her attorney, Todd Greenwald.

Plaintiff testified that she was 42 years old at the time of the hearing and completed high school and a few college classes. AR 307. Plaintiff previously worked full time as a nursing assistant/hospital aide, and she did not think she could perform the job anymore because she cannot stand or sit for very long. AR 308-309. She can sometimes stand for 10 minutes to an hour, as the length of time differs depending on her pain. AR 309.

When questioned by her attorney, Plaintiff testified that she had two procedures on her back that initially helped. A few weeks later her pain returned. AR 310. She characterized her pain without medication to be an eight on a scale of one to ten, and a five or six with medication. AR 310. She testified that her pain never goes below a five or six. AR 310. The pain has been consistent to just prior to February 15, 2002, when she last worked. AR 311. Doctors have suggested more invasive surgery, but have recommended waiting a year from her prior procedure. AR 311. Over the past 60 days, her symptoms have not changed. Sometimes it is a burning pain and sometimes she has numbness. She also has pain radiating to the leg, down to her knee, off and on. AR 312.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff testified that she could walk without a crutch or cane, but she did not think she could tolerate standing and walking for two hours in an eight hour day without being able to sit or lay down. AR 312. Her ability to sit uninterrupted varies, but is generally anywhere from 15 to 30 minutes. Her ability to walk also varies. She could walk a maximum of a couple of blocks, but she always has pain. The pain consists of a burning pain going down her leg, feeling like her hip "goes out" and numbness in her leg. She cannot run or walk fast. AR 313. Plaintiff takes Vicodin three times a day, and has been taking it for three to four months. She has not gone a day without pain medication since February 2002. AR 314.

Plaintiff also testified that she cannot work because she thinks she has depression and gets "antsy and real manic," although she has not yet seen a doctor for her symptoms. AR 316.

Plaintiff spends her days sleeping, laying down, and staying in bed. She estimated that she spends nine hours laying down on any given day between breakfast and dinner. AR 316.

Her doctors have told her to increase her walking as tolerated, but she has only been able to walk a few blocks. AR 317-318.

Her husband does most of the housework and laundry, and her two daughters also help. AR 318. Her husband works intermittently, and her source of income is AFDC. She intends to have the recommended surgery when the doctors tell her the time is right. AR 322.

Medical Record

A March 27, 2003, lumbar spine x-ray revealed disc space narrowing at L5-S1. AR 131.

On March 29, 2003, Plaintiff saw consultive examiner Norman Linder, M.D. She complained of low back pain with intermittent pain shooting down her bilateral lower extremities and left upper extremity pain. Dr. Linder reviewed records from 2001, including a February MRI and May operative report. Plaintiff indicated that she could sit up to one hour, walk up to two hours, stand up to two hours, but would have difficulty climbing up stairs, opening jars or reaching overhead. She thought she could lift two pounds. AR 126-127.

Upon examination, Plaintiff was in no apparent distress, sat comfortably during the evaluation and was able to transfer to and from the examining table. She could also take off her socks and shoes and put them back on. AR 127. Gait was normal, as was toe and heel walking.

1  She had tenderness to palpation along the lumbosacral paraspinals, but had no fibromyalgia
2  tender points. AR 128. Strength in her upper and lower extremities was 4/5, secondary to effort.
3  Dr. Linder diagnosed mild retrolisthesis of L5-S1 of 2-3 mm, per MRI, broad-based midline disc
4  protrusion at L5-S1 of 4-5 mm, and lumbosacral muscular ligamental sprain/strain. Based upon
5  his examination, Dr. Linder opined that Plaintiff could frequently lift 10 pounds, 20 pounds
6  occasionally, stand and/or walk for a total of six hours in an eight hour day, and sit for a total of
7  six hours in an eight hour day. She needed to refrain from frequent climbing, stooping and
8  crouching. AR 129-130.

9       On April 8, 2003, State Agency physician Anne M. Khong, M.D., completed a Physical
10 Residual Functional Capacity Assessment form and opined that Plaintiff could occasionally lift
11 and carry 20 pounds, 10 pounds frequently, could stand and/or walk for six hours in an eight hour
12 workday, and could sit about six hours in an eight hour workday. She could never climb ladders,
13 ropes or scaffolds, and could occasionally climb ramps or stairs, stoop, crouch and crawl.
14 Plaintiff could frequently balance and kneel. AR 132-139. This opinion was affirmed on
15 September 15, 2003. AR 139.

16      On August 22, 2003, Plaintiff began treatment at Universal Pain Management ("UPM")
17 and complained of constant low back pain with episodes of radiation to her left lower extremity
18 and numbness. Walking, increased activity and sustained positioning exacerbate her symptoms.
19 Plaintiff reported that her pain has significantly changed her activities of daily living. Nurse
20 Practitioner Elizabeth Tighe and Ray d'Amours, M.D., assessed chronic low back pain and
21 radicular symptoms to her left lower extremity. AR 234.

22      Plaintiff was seen at UPM on September 19, 2003. Pursuant to her request, she was
23 given a prescription for physical therapy twice a week, for eight weeks. AR 229-230. There is
24 no evidence of physical therapy in the record.

25      On November 21, 2003, Plaintiff reported that her pain had increased over the last month
26 due to increased housework in preparation for the holidays. She stated that her pain was
27 primarily in her left hip and thigh. AR 219. There was normal tenderness over the lower aspect
28

of the lumbar spine as well as bilateral lumbar paraspinal tenderness, left side greater than the right. Straight leg raising was positive on the left. AR 220.

Plaintiff underwent an intradiscal electrothermotherapy (IDET) procedure on March 29, 2004. AR 215-216.

Plaintiff was seen in follow-up at UPM on April 23, 2004. She reported that she had some burning pain in her left thigh down to her knee, but that she had no spasms or radiating pain into her right lower extremity. Her back pain was fairly well controlled with Vicodin and Motrin except for the pain in her left thigh. Nurse Practitioner Tighe and Dr. d'Amours opined that her condition was much improved. Her medications were refilled and Neurotonin was added to help with the thigh burning. AR 211-213.

On May 14, 2004, Plaintiff reported that her symptoms continued to improve after the March 2004 procedure, and the radiating pain in her left lower leg was decreasing. Although she continued to complain of low back pain radiating into her hip and buttock, she reported that it did not go into her left thigh and that her spasms have subsided. Plaintiff continued to wear her back brace and restrict her activity, but remained active by walking. Upon examination, there was minimal tenderness over the lower aspect of the lumbar spine and left sided lumbar paraspinous tenderness. There was also tenderness to palpation into the left gluteus maximum and left hip. Straight leg raises were negative. AR 208. Nurse Practitioner Tighe and Francis X. Riegler, M.D., indicated that she continued to improve. Her medications were refilled and adjusted, and she was instructed to continue wearing her back brace. AR 207-208.

In July 2004, Plaintiff reported that she was trying to remain active and go about her activities of daily living. Plaintiff stopped taking Neurotonin, but was directed to begin again as directed. AR 294.

In September 2004, Plaintiff indicated that she had significant improvement in her low back pain and radiation of her pain in her right lower extremity, but that she continued to experience some pain in her left lateral thigh all the way down to her knee. AR 284. Plaintiff indicated that she was weaning herself off Neurotonin because she was forgetful in taking it. AR 284.

On October 22, 2004, Plaintiff reported that she fell about two weeks ago and that since the fall, the pain has shifted to her right thigh. She further reported that the pain in her left side has somewhat lessened. AR 280. Her gait was slightly antalgic and she moved somewhat stiffly off and on the examining table. Dr. Riegler indicated that they would consider another IDET when she was nine months post op. AR 282.

In November 2004, Plaintiff complained of more right-sided burning pain in her lower extremity down to her calf. AR 278.

Plaintiff returned to UPM on February 18, 2005, indicating that the prior IDET alleviated her right-sided pain but that she continued to experience left-sided pain. AR 265.

On February 28, 2005, Plaintiff underwent an IDET procedure on her left side. AR 190-191.

Plaintiff saw Dr. d'Amours on May 20, 2005. She had tenderness in her left buttock but straight leg raises were negative. Her gait was intact. He instructed her to gradually increase her activities. AR 256.

ALJ's Findings

The ALJ determined that Plaintiff was insured for benefits through June 30, 2005, and she therefore had to prove disability before that date. AR 22. He found that her coccyx pain due to a bulging lumbar spine disc was a severe impairment, but that she retained the residual functional capacity ("RFC") to perform a full range of light work (lift and carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk for six hours in an eight hour day, and sit for six hours in an eight hour day). In so finding, he determined that Plaintiff's allegations regarding her abilities and pain were not totally credible. Based on Medical-Vocational Rules 202.20 and 202.21, the ALJ found that Plaintiff was not disabled. AR 23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe"

---

[3]All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

1  (coccyx pain due to a bulging lumbar spine disc) based on the requirements in the Regulations
2  (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which
3  meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4;
4  (4) cannot perform her past relevant work; but (5) retained the RFC to perform the full range of
5  light work and was therefore not disabled.  AR 22-23.

6  Plaintiff's sole contention is that the ALJ failed to properly evaluate her subjective
7  complaints.

## DISCUSSION

9  Plaintiff contends that the ALJ erred in rejecting her testimony concerning her abilities
10 and pain.  She contends that her testimony is consistent with the record and that the ALJ's
11 rational for rejecting her testimony is without merit.

12 The ALJ is required to make specific findings assessing the credibility of plaintiff's
13 subjective complaints.  *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  In rejecting
14 the complainant's testimony, "the ALJ must identify what testimony is not credible and what
15 evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.
16 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.
17 1988)).  Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the
18 severity of her pain and impairments is unreliable, the ALJ must make a credibility determination
19 with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily
20 discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).

21 "The ALJ may consider at least the following factors when weighing the claimant's
22 credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]
23 testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work
24 record, and testimony from physicians and third parties concerning the nature, severity, and effect
25 of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d
26 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in
27 the record, we may not engage in second-guessing." *Id.*

28

After reviewing the medical evidence and Plaintiff's testimony, the ALJ concluded that she was not totally credible for a number of reasons. He first set forth the objective evidence that contrasted with Plaintiff's testimony. Plaintiff reported that her two IDET procedures helped, and she had normal gait, was neurologically intact and had negative bilateral straight leg raises at her last treatment of record in May 2005, less than one month prior to the hearing. AR 20-21. While the ALJ cannot rely solely on the lack of objective evidence, he is allowed to consider it in assessing a claimant's credibility. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991).

In questioning the ALJ's rationale, Plaintiff cites medical evidence, dating as far back as 2001, that she contends supports her testimony.[4] However, this is not the correct standard of review. Plaintiff will not prevail simply because there is evidence that may support her position. *Richardson v. Perales*, 402 U.S. at 399; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Rather, the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or is based on legal error. *Matney v. Sullivan* 981 F.2d 1016, 1019 (9th Cir. 1992). Moreover, the courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson,* 402 U.S. at 399. In any event, the Court must uphold the ALJ's decision were the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The record before the ALJ contained ample evidence to support his decision, making his decision a rational interpretation of the conflicting medical record.

---

[4] The parties disagree as to the relevance of medical evidence gathered prior to Plaintiff's February 2002 onset date. While Plaintiff contends that the evidence is relevant to Plaintiff's longitudinal record, it seems that pre-onset date evidence in this case would be irrelevant and unhelpful. The ALJ does not reject the fact that Plaintiff was involved in a car accident, or even that she has as back problem and related pain. Rather, he rejects Plaintiff's testimony as to her *current condition and abilities,* and evidence from 2001 does not aide in this determination. Indeed, Plaintiff must provide medical evidence "that [she has] an impairment(s) and how severe it was during the time [she says] that [she is] disabled.. 20 C.F.R. § 404.1512(c). In any event, the evidence does not demonstrate that Plaintiff's condition is any more severe than the ALJ found it to be. The evidence concerns Plaintiff's car accident in 2001 and subsequent treatment notes, yet it brings no new evidence and/or limitations to light, nor does it disprove any of the ALJ's findings. In fact, many of the treating/examining physicians in subsequent treatment notes either reviewed these records or were made aware to the accident through Plaintiff's reports.

1     The ALJ next contrasted Plaintiff's treating physician's recommendation on May 20,
2 2005, to gradually increase her activity, with Plaintiff's testimony on June 16, 2005, that she
3 could not walk for very long and lies down all day.  AR 256.  Indeed, Plaintiff never reported to
4 any physician that she needed to lay down all day.[5]  Plaintiff correctly notes that attempting an
5 activity does not necessarily mean that there will be success, and that such attempts are not
6 indicative of current ability.  However, in this case, where her treating physician believed her to
7 be well enough to begin gradually increasing her activity level *less than one month* before
8 Plaintiff testified to alleged extreme limitations, the ALJ was entitled to take the
9 recommendation into account in assessing her credibility.

10    In addition to the above, the ALJ questioned Plaintiff's credibility based on the poor
11 effort exhibited during the examination by Dr. Linder*,* the fact that she was a "no show" at two
12 appointments after her second IDET procedure, and the fact that she was non-compliant with her
13 hypertension medication.  AR 20.  The Court agrees with Plaintiff that these factors may not
14 necessarily be the most probative of Plaintiff's credibility and may stick out from the rest of the
15 record like a "sore thumb."  Reply, at 4.  However, when viewed together and in combination
16 with the other factors stated above, Plaintiff's behavior supports the ALJ's conclusion.

17    Again, it is worth noting that this Court's function is not to second-guess the ALJ's
18 determination, nor is it to overturn his decision because evidence exists that may support
19 Plaintiff's position.  Rather, the Court must ensure that the ALJ's decision was supported by
20 substantial evidence and free of legal error.  The decision at issue here passes this test, and
21 Plaintiff's disagreement with the decision does not render the decision improper.

## CONCLUSION

23    Based on the foregoing, the Court finds that the ALJ's decision is supported by
24 substantial evidence in the record as a whole and is based on proper legal standards.

---

[5] Although Plaintiff claims that she told Dr. d'Amours that she needed to rest for most of the day on two occasions, the cited evidence does not support her contention.  She cites to AR 207, where it states that Plaintiff "continues to wear her back brace and to restrict her activity," but this sentence is followed by, "She remains active by walking."  AR 207.  Plaintiff also cites to AR 237, which states that she spends her days "reading, watching TV and resting."  While the sentence references the fact that she rests, it does not necessarily support her position that she rests for most of the day.  AR 237

Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff Linda Cladek.

IT IS SO ORDERED.

Dated:  May 21, 2007               /s/ **Dennis L. Beck**
                                   UNITED STATES MAGISTRATE JUDGE